# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DAVID DWAYNE CASSADY,            )
                                 )
    Plaintiff,                   )
                                 )
v.                               )     Case No. CV412-008
                                 )
MILTON, *Medical Director*; WARDEN )
KOON; JACK CARTER, *Mental*      )
*Health Director*; NURSE HESTER; )
OFFICER YOUMAN; OFFICER          )
WOOTEN; OFFICER REGISTER;        )
and OFFICER CUMMINGS,            )
                                 )
    Defendants.                  )

## **REPORT AND RECOMMENDATION**

The Court ordered plaintiff to show cause why his case should not be dismissed after he moved to proceed *in forma pauperis* but then managed to pay the entire $350 filing fee. (Doc. 5.) Cassady responded (doc. 6), and the Court accepts his explanation that his mother paid the filing fee out of her own funds. (Doc. 6; doc. 8 (affidavit from Cassady's mother).) Consequently, this case is ready to be screened under 28 U.S.C. § 1915A, which requires courts to identify "cognizable claims" filed by prisoners

and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief. *See also* 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four grounds as to any prisoner suit brought "with respect to prison conditions").

Cassady brings a medical deprivation claim. (Doc. 1.) The Court is well acquainted with his medical issues, *see Cassady v. Donald* ("*Cassady I*"), No. CV408-250 (S.D. Ga. filed 2008) (suit against wardens and the prison system for placing him in a cell with a heavy smoker despite his known breathing problems), including asthma and chronic obstructive pulmonary disease ("COPD"). (Doc. 1 at 12.) He states that during a brief transfer from Georgia Diagnostic and Classification Prison to Coastal State Prison for proceedings related to *Cassady I*, he was denied medical care for those issues.

When he arrived at Coastal on October 19, 2010, he presented the intake nurse with a medical order for breathing treatments twice daily and access to an inhaler, but the nurse said he would not be given breathing treatments until his medical record transferred from his

2

"home" prison. (*Id.* at 11.) Notably, however, he was allowed to keep his inhaler. (*Id.* at 14.) The next day he asked again but treatment was refused; once again, the nurse explained that she had not received a fax and that he was under no distress. (*Id.* at 12.) He spoke to Jack Carter, the prison's mental health director, about his problems. (*Id.* at 13.) Carter asked Warden Koon to meet with him to listen to Cassady's complaints in person. (*Id.*) Cassady explained to them that he had severe asthma and COPD and needed his breathing treatments. (*Id.*) Koon instructed Carter to handle the issue. (*Id.*)

After court proceedings on October 21, 2010,[1] Cassady reported to medical stating that he was having trouble breathing and needed a breathing treatment. (*Id.*) A nurse stated that his treatment would be administered in his building, but it never came. (*Id.* at 13-14.) Cassady wrote Koon and Carter informing them of his issues, but the letters were unavailing. (*Id.* at 14.) During evening pill call on October 24, 2010, he asked the nurse about the treatments but she stated that she had no knowledge about the issue. (*Id.*) He pointed out to her that his inhaler

---

[1] During Cassady's testimony at the hearing conducted on October 21, the Court observed no signs of stress or breathing difficulties. Nor did Cassady or his counsel complain about the medical care he was receiving at Coastal.

3

was nearly empty. (*Id.*)

The next morning, Carter informed Cassady that he spoke with the prison's medical director, defendant Milton. (*Id.* at 14-15.) Milton reported to Carter that Cassady had received the required breathing treatments. (*Id.* at 15.) Plaintiff told Carter that he had not and emphasized to Carter that his inhaler was "dangerously" close to empty. (*Id.*) Carter stated that he would check into the matter again. (*Id.*) On Tuesday the 26th, Carter again stopped by to check in on Cassady. (*Id.*) Cassady showed him that his inhaler was empty. (*Id.*) Later, during pill call, he asked Nurse Hester and Officer Youman, both defendants, to get him a replacement inhaler. (*Id.* at 15-16.) He stated that he was experiencing difficulty breathing and had tightness in his chest; he begged for a breathing treatment. (*Id.* at 16.) Nurse Hester told him to fill out a sick call request. (*Id.*) Not long after, Cassady began to experience serious breathing issues. Nearby inmates banged on their doors in order to get the guards' attention. (*Id.*) Officers Wooten and Youman responded. (*Id.*) "Defendant Wooten came into [Cassady's] cell and helped prop [him] against the wall." (*Id.*) He took plaintiff's empty

inhaler. (*Id.*) Youman allegedly stood by and watched, and he said "stop wheezing you're not getting out of here." (*Id.*) They left, but returned a few minutes later to tell him that the second shift would take him to medical. (*Id.*) Youman allegedly "imitated plaintiff's wheezing and laughed." (*Id.*)

Defendant Register, a second shift officer, witnessed Cassady wheezing and in distress. (*Id.* at 17.) According to Cassady, he asked to be taken to medical for a breathing treatment, but Register never contacted medical. (*Id.*) Instead, Cassady spent the night suffering and gasping for breath trying everything he could think of to get his asthma under control. (*Id.*) He used his "Advair dry powder steroid inhaler" repeatedly. (*Id.*) The next morning, during shower call, he asked Officer Cummings, another defendant, to call medical to notify them about his issues. (*Id.* at 18.) Cummings returned stating that nothing could be done for him since his file had not yet made it to medical. (*Id.*) He refused to attempt to make direct contact with Koon or Carter. (*Id.*) At pill call, he told the nurse about his situation and explained that his throat was raw from using the steroid inhaler repeatedly. (*Id.*) The nurse stated that

she couldn't reorder his mental health or breathing medications without first receiving his medical records and a physician's order. (*Id.*) The next day, he was returned to his home prison. (*Id.*) A few days later at his home prison's medical center, he was informed that the staff had actually faxed and phoned his physician's orders to Coastal State Medical Prison. (*Id.* at 19.) Additionally, his medical records were available through an online database used state wide. (*Id.*)

Cassady claims that the defendants, all named here only in their individual capacities (*Id.* at 9), failed to provide him with proper medical care in violation of the Eighth Amendment to the United States Constitution.[2] (*Id.* at 19-20.) In order to state a claim, he must offer facts showing: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The second element, deliberate indifference, requires a plaintiff to show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of

---

[2] He asks for damages, a jury trial, reasonable costs and attorneys' fees as well as any other relief the Court deems proper. (Doc. 1 at 20.)

6

that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining that the plaintiff must show that the defendant was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference"). Thus, "[a] defendant . . . may escape liability if he did not have subjective knowledge of the risk to begin with. This subjective knowledge must be specific, as we have held that 'imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.' *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). This question of '[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact,' and such knowledge may be inferred based on the obviousness of the risk. *Farmer*, 511 U.S. at 842, 844–45." *Bugge v. Roberts*, 2011 WL 1885537 at * 4 (11th Cir. May 18, 2011).

The Court accepts for present purposes that Cassady has a serious medical need: he required treatment for COPD and asthma. *See Cassady*, No. CV408-250, doc. 13 at 4 (finding serious medical need based upon his

breathing disorders). Thus, the primary question at screening is whether the named defendants were deliberately indifferent to that need. Clearly the answer is yes for Officers Wooten, Youman, and Register. Accepting Cassady's allegations as true, these officers observed that he was in the midst of an asthma attack and that his inhaler was empty, yet they refused to bring him to medical or provide him with any treatment. (Doc. 1 at 16-17.)

But the answer changes for the remaining defendants. While Warden Koon and Carter were on notice of Cassady's needs, the facts in the complaint suggest that they went out of the way to accommodate him. While Koon ultimately delegated the treatment issues to Carter, he treated Cassady's problems as serious enough to merit an in-person meeting. Carter even took extraordinary measures to help Cassady, and he was told by Medical Director Milton that Cassady *was* being treated. As for Milton, it is unclear whether or not he made any decision to deny Cassady care. Cassady is silent on that score. Perhaps his subordinates reported that Cassady received the appropriate treatment and he believed them. Without something more, Cassady's allegations against him

suggest nothing more than negligence.

Similarly, Cassady has not suggested that Nurse Hester realized that Cassady was presently in serious distress when she told him to put in a sick call request. (*Id.* at 16.) And Officer Cummings actually went to medical to see if anything could be done, and came back after the medical administrators told him that Cassady still hadn't received his medical files. (*Id.* at 18.) Cassady has *not* alleged that Cummings, or for that matter any of the defendants, actually *knew* that his medical files were available or that his orders had actually been transferred. Taking these facts at face value, Cassady has simply failed to plead that these defendants utterly disregarded his complaints after drawing the inference that inaction might lead to serious harm. Accordingly, his claims against Koon, Carter, Milton, Hester, and Cummings fail.

For the reasons explained above, Cassady's claims against Koon, Carter, Milton, Hester, and Cummings fail, and they should be **DISMISSED** from this suit. Nevertheless, the Clerk is **DIRECTED** to forward a copy of his complaint and this Report and Recommendation to the Marshal for service upon defendants Wooten, Youman, and Register.

**SO REPORTED AND RECOMMENDED** this 22nd day of May, 2012.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA